UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) No. 2:12-CR-118 |
| | ) |
| GARY EUGENE TEAGUE | ) |

### MEMORANDUM AND ORDER

Now before the Court is the defendant's renewed *pro se* motion for compassionate release pursuant to 18 U.S.C. 3582(c)(1)(A)(i). [Doc. 458].[1] The United States has responded in opposition [doc. 461], and the defendant has not replied within the time allowed by this court's Local Rules. For the reasons that follow, the defendant's motion will be denied.

### I. BACKGROUND

In April 2014, this Court sentenced the defendant, as a Career Offender under U.S.S.G. § 4B1.1, to a guideline sentence of 200 months' imprisonment for conspiring to distribute oxycodone. The defendant is presently housed at FCI Williamsburg with a projected release date of April 21, 2027. *See* Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Feb. 22, 2021). He now moves for compassionate release due to the COVID-19 pandemic, hypertension, high cholesterol,

---

[1] A prior motion [doc. 444] was denied for failure to exhaust administrative remedies. [Doc. 445].

back and neck pain, age (53), anxiety, a swollen prostate, the unspecified medical needs of his sister, and his rehabilitative efforts. [Doc. 458, p. 3-6].[2]

## II. COMPASSIONATE RELEASE

Section 3582(c)(1)(A)(i) of Title 18, United States Code, allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons." That statute, as amended by the First Step Act of 2018, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons ["BOP"], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A)(i). Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not a defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow a defendant to file a motion for compassionate release after first asking the BOP to file such a motion on his behalf. *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).

---

[2] The defendant also raises arguments pertaining to his conditions of confinement. Such claims might be cognizable, *see, e.g., Estelle v. Gamble*, 429 U.S. 97 (1976), but they should be presented in a civil lawsuit in the prisoner's district of confinement after the exhaustion of administrative remedies. *See* 42 U.S.C. § 1997e(a). There is no evidence that this defendant has exhausted his administrative remedies on those claims, nor is he incarcerated in this judicial district.

2

Case 2:12-cr-00118-RLJ-MCLC   Document 462   Filed 02/24/21   Page 2 of 8   PageID #: 2173

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and the accompanying application notes. District courts in this circuit have previously turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction but, as of November 20, 2020, are no longer to do so, at least as to compassionate release motions filed by defendants (rather than by the BOP). *See United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) ("[H]olding" that guideline 1B1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release."); *accord United States v. Elias*, 984 F.3d 516 (6th Cir. 2021).[3] "District courts should [still] consider all relevant § 3553(a) factors before rendering a compassionate release decision." *Jones*, 980 F.3d at 1114.

### A. Exhaustion

The defendant has previously submitted a compassionate release request to the BOP, and more than 30 days have passed since that request was received by the warden. [Doc. 458, ex. A]. The Court thus has authority under § 3582(c)(1)(A) to address the instant motion. *See Alam*, 960 F.3d at 832.

### B. Merits

As mentioned above, in support of his motion the defendant cites the COVID-19 pandemic, hypertension, high cholesterol, back and neck pain, age (53), anxiety, a swollen prostate, the unspecified medical needs of his sister, and his rehabilitative efforts. Consistent with § 3582 and the Sixth Circuit's holding in *Jones*, this Court has considered

---

[3] The parties in this case have not addressed any guideline policy statement other than § 1B1.13.

3

the defendant's arguments (individually and in combination) along with the broader facts of this case in light of the pertinent § 3553(a) factors. Pursuant to 18 U.S.C. § 3553(a),

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>>
>>> (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>>>
>>> (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . .
>
> . . .

> (5) any pertinent policy statement—
>
>> (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>>
>> (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

At the defendant's correctional institution, there are currently 29 inmates and 43 staff positive for COVID-19, with 154 inmates and four staff having recovered, and three inmate deaths. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Feb. 22, 2021). These numbers are significant, but the Court simultaneously notes that outside the prison setting our nation remains in grave crisis in terms of COVID diagnoses, variants, hospitalizations, and deaths. Further, the COVID-19 pandemic cannot alone justify compassionate release. *See, e.g., United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. April 22, 2020) ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility . . . , whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release."); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]").

BOP medical records show that the defendant has been diagnosed with, and receives treatment for, hypertension, high cholesterol, back and neck pain, depression, and a swollen prostate. [Doc. 458, ex. C]. As recently as February 2020, a BOP physician described him as "doing fairly well clinically." [*Id.*].

Hypertension is presently considered to be a factor which creates an increased risk of severe illness from COVID-19, and the danger of COVID-related complications generally increases with age. *See* People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb, 22, 2021). The BOP's SENTRY Report shows that the defendant is categorized physically as Care Level 2. "Care Level 2 inmates are stable outpatients who require clinician evaluations monthly to every 6 months. Their medical . . . conditions can be managed through routine, regularly scheduled appointments with clinicians for monitoring. Enhanced medical resources, such as consultation or evaluation by medical specialists, may be required from time to time." *See* http://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf (last visited Feb. 22, 2021). In terms of mental health, the defendant is categorized as Care Level 1. "Care Level 1 inmates are less than 70 years of age and are generally healthy. They may have limited medical needs that can be easily managed by clinician evaluations every 6 to 12 months." *See id.*

SENTRY further shows that the defendant is employed, has completed a small amount of programming, and has incurred only one disciplinary sanction (for an apparently minor infraction). On these points, he is commended. Also laudable is the defendant's

desire to assist with his sister's unspecified medical issues.

Turning to the nature and circumstances of the instant offense and the defendant's history and characteristics, in this case the defendant was an active participant in a conspiracy which distributed a large quantity of oxycodone. [Presentence Investigation Report ("PSR"), ¶¶ 9-23]. When sentenced, he had a staggering 29 countable criminal history points and, as noted above, was a Career Offender. [*Id.*, ¶¶ 80-83].

Prior convictions include multiple public intoxication, driving, theft, and controlled substance offenses. [*Id.*, ¶¶ 41-42, 45-49, 51-52, 54-58, 60-63, 65-72, 74-76, 78-79]. In 1988 he was convicted of assault and battery and shooting into a vehicle. [*Id.*, ¶ 43]. In 1991 he was convicted of statutory rape. [*Id.*, ¶ 50]. There have been three aggravated burglary convictions, and one conviction each for assault, domestic assault, and resisting arrest. [*Id.*, ¶¶ 53-54, 59, 64, 78]. There have been several probation and parole violations and revocations. [*Id.*, ¶¶ 49, 55, 63-64, 81]. According to SENTRY, the BOP considers the defendant a medium security inmate with a high risk of recidivism.

The defendant's substance abuse history began at age 15. [*Id.*, ¶ 110]. At the time of sentencing, the defendant suffered from high cholesterol and neck and back pain. [*Id.*, ¶¶ 105-107]. Those conditions plainly had no deterrent effect on his criminal conduct in this case.

The Court has considered the relevant § 3553(a) factors, the circumstances of this case, the defendant's history and characteristics, and the arguments raised in the instant motion. The Court recognizes the defendant's age, health problems, and rehabilitative efforts. However, none of these factors (individually or collectively) are present to an extraordinary

7

and compelling degree such as to justify compassionate release. Also, while the defendant's desire to help his sister is admirable, it is not uncommon for this Court to sentence persons with ill or otherwise disadvantaged family members.

Further, all of these points are heavily outweighed by the defendant's lengthy criminal history and prior prison sentences which left him undeterred. Additionally, more than six years of actual time remains on his Career Offender sentence. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) (Several § 3553(a) factors "permit the court to consider the amount of time served in determining whether a sentence modification is appropriate."). Compassionate release on the facts of this case would not reflect the seriousness of the offense of conviction, would not promote respect for the law or provide just punishment, and would not afford adequate deterrence or protect the public from future crimes of this defendant.

### III. CONCLUSION

As provided herein, the defendant's motion for compassionate release [doc. 458] is **DENIED**.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge